*SEAMAN and others, *vs*. WHITNEY. [ *260 ]

An action for *money had and received*, will not lie by a *creditor* against a *third person*, in whose hands funds have been deposited by a debtor, with directions to *pay them over* to the creditor in extinguishment of a debt, unless there be an agreement either express, or to be *implied* from the circumstances of the case, by which the funds *become the property* of the creditor so that the debtor loses all control over them, and is disabled from giving them another direction; or unless the money be deposited with the concurrence of the creditor, expressed previous to its receipt by the agent.

THIS was an action of *assumpsit*, tried at the New-York circuit, in June 1837, before the Hon. OGDEN EDWARDS, one of the circuit judges.

The plaintiffs declared on the *common money counts*. They were the holders of a promissory note, drawn by *Samuel S. Hill*, dated 17th August,

1835, for $3157,43, payable to their order at the Broome County Bank, sixty days after date. They had the note discounted at the *Phoenix Bank*, in the city of New-York, which bank sent the note to the Broome County Bank for collection. On the 19*th October*, when the note fell due, it was protested for non-payment, and on the 29*th October*, the plaintiffs took it up. The maker of the note to provide funds for its payment, had placed in the hands of the defendant, an accepted draft drawn by him on J. & C. J. Manning, for $3200, payable to the defendant. On the 23d *September*, the defendant endorsed the draft, and procured it to be discounted at the *Towanda Bank*, in Pennsylvania, and on the 7*th October*, received the avails thereof, viz : $3139,23. Previous to the 19th October, 1835, the defendant placed in the hands of an agent sufficient funds, and directed him to take up the note of the 17th August, 1835, but subsequently withdrew them, and applied them towards payment of a demand, he himself had against Hill. The judge refused to nonsuit the plaintiffs, and charged the jury that if they believed that the defendant on receiving the draft on J. & C. J. Manning, promised to pay the note in question, the draft constituted a *trust fund* in favor of the holders of the note, and of the parties [ *261 ] *to it who might afterwards be compelled to pay it, or who should become the owners of it after it fell due ; and that the plaintiffs having paid, and taken up the note after it was protected, an action for money had and received, lay in their names against the defendant, to recover the amount of the draft. To which charge the counsel for the defendant excepted. The jury found for the plaintiffs, to the amount of the draft and the interest thereof. The defendant moves for a new trial.

*J. S. Bosworth*, for the defendant.

*J. Slosson*, for the plaintiff.

*By the Court*, NELSON, Ch. J. No case heretofore decided has gone the length of maintaining this action, nor can the verdict be placed upon any acknowledged principle in the law.

At most, it is an attempt by a creditor to seize upon a fund placed by his debtor in the hands of a third person with directions to apply it in payment of a debt without any communication with the creditor, or understanding between them to that effect. Whatever may be the claim in equity to enforce the appropriation, clearly none such can be set up in a court of law. The creditors here shew no privity in respect to the transaction with either the debtor or the defendant—the arrangement was exclusively between them— and at all times, down to the receipt and misapplication of the money, legally speaking, it continued under the control and direction of the former.

He might have released, changed its destination, or made any other disposition of it at will.

Suppose he had subsequently directed an application in payment of some other debt and which had been made ? Can it be doubted, but that the defendant by compliance with such direction would have discharged his trust ? or if Hill had brought an action to recover the money could not Whitney have set off his demand ?

In all the cases, the principle of which is sought to be applied, and on which the action must be maintained, if at *all, the fund   [ *262 ] had been appropriated by an nnderstanding between the debtor and creditor, assented to by the defendant; or by an express undertaking of the defendant with the creditor at the request of the debtor, or both.

In the case of *Neilson* v. *Blight*, 1 *Johns. Cas.* 205, the defendant not only accepted the property on condition of paying the plaintiff, but advised him to that effect. A promise was properly inferred to pay the money when received. In *Weston* v. *Barker*, 12 *Johns. R.* 276, the debtor gave the plaintiff an order on the defendant for the money when received, subject to which he had previously agreed to receive and hold it. In *Williams* v. *Everett and others*, 14 *East*, 582, it was determined where funds were remitted with instructions to pay the creditor, and of which he was advised, that if the banker refused so to apply them, this action could not be maintained against him ; that the funds were still under the control of the remitter. See also *Hodgson* v. *Anderson*, 3 *Barn. & Cress.* 842. In *De Barnales v. Fuller*, 14 *East*, 588, *n.* the bill held by the defendants for collection belonged to the plaintiff, and of course they could not renounce the purpose for which the money was paid ; they were the agents of the plaintiff, and could hold and apply it to no other purpose.

The case here is very much like *Yale and others* v. *Bell and others*, 3 *Barn. & Cress.* 683. There the plaintiffs held a bill of exchange accepted by I., payable at the house of the defendants. It was duly presented and payment refused for want of funds. The next day a bill was received from the acceptor with instructions to pay the plaintiffs' bill with the proceeds, who again presented it after the money was received by the defendants, and payment refused. They applied it on their own demands. The court say, unless some agreement had taken place respecting the bill between the defendants and the plaintiff, the former could only be considered as holding it for the use of I.

I agree such an undertaking may be implied, according to the case of *Weston* v. *Barker*, by an arrangement to that effect between the defendant and debtor, but in order to make the receipt of money in pursuance thereof in *such case enure to the use of the creditor, he   [ *263 ] must have had notice of, and concurred in it, otherwise there is

no privity express or implied between him and the defendant; and this before the money is received, for he must be legally entitled to the money at the time of the receipt, not at the time of the action. 2 *Saund. Pl. and Ev.* 673. According to the case of *Williams* v. *Everett and others*, the true test is, to whom does the money belong at the time it is received by the defendant—to the debtor or to the creditor? if to the former, the action will not lie. To hold that it belonged to the plaintiffs in this case would be saying, that the moment a debtor puts money into the hands of an agent to pay a debt, it passes entirely beyond his control, and vests absolutely, in the creditor, without his privity or assent. No such doctrine can be maintained. There must be some previous understanding with the creditor by the defendant, either directly, or through the agency of the debtor himself upon which to found a right to the fund, or an undertaking to pay.

Another insuperable objection, in my opinion, is taken to the recovery, namely : that the promise of the defendant, if it could be implied from the evidence in the case, enured to the benefit of the holder of the note at the date of the receipt of the money. The liability of the defendant then attached, if at all, according to all the cases ; the draft having been appropriated to pay the note, the money when received belonged to the holder, to whom the right of action immediately accrued. The money was received on the 7th October, and the plaintiffs did not take up the note till the 29th. The Phœnix Bank were the holders on the 7th, to whom the promise must have enured ; clearly they could have maintained the action if any one ; and then unless we concede negotiable qualities to this parol engagement, the plaintiffs must fail.

In every view I can take of the case, I think a new trial must be granted.

New trial granted.