As the injunction which was issued in this case was irregularly as well as erroneously granted, it must be set aside with costs.

---

## Winship and wife *vs.* Jewett and Hess.

The general affidavit of a defendant, that he has stated his case truly to his counsel, and that he is advised by such counsel, and believes, that he has a good and substantial defence upon the merits, is not sufficient to authorize the court of chancery to set aside a regular default or decree. But the party who wishes to obtain relief of that kind here, on the ground that he has a meritorious defence, must state the substance of such defence, in the affidavit on which his application is founded, or must show the facts, upon oath, in some other form; so that the court may see what the alleged defence is, and be able to form an opinion, whether the defendant has a meritorious, or only a mere technical, defence; or whether he has any defence whatever to the suit.

The fact that arbitrators were not sworn, merely constitutes a technical defence, if it is any defence, to a bill filed to enforce the performance of their award; and the court of chancery will not open a regular order to close the proofs, and a decree founded thereon, for the purpose of allowing the defendant to prove such a defence.

The fact that arbitrators have made an erroneous decision does not render their award invalid. But the award, if made in good faith, is conclusive upon the parties; and neither party will be permitted to prove that the arbitrators decided wrong, either as to the law or the facts of the case.

It is no defence to a bill to enforce the performance of an award, that after the award had been concurred in by all the arbitrators, and published, one of them dissented therefrom.

*It seems* that an omission to have arbitrators sworn does not render their award invalid, where no objection is made previous to the making of such award.

This was an appeal, by the complainants, from an order of the vice chancellor of the second circuit. The bill was filed to compel the specific performance of an award of arbitrators, for the partition of land. On the 17th of July, 1840, Eliza Hunt, then the widow of R. L. Hunt, deceased, but who, subsequently to the award, became the wife of D. Winship, conveyed to the defendants, for the consideration of five dollars, two undivided third parts of the real estate of which her late husband had died seized, and which she claimed under his will; reserving to herself the other third. On the same day the defendants executed to her an instrument which recited the making of that conveyance, and that the real estate embraced therein consisted of a farm of land in Westchester county, containing, by estimation, 300 acres; which instrument contained certain stipulations, on the part of the defendants, to pay the debts of her deceased husband, or the part of them specified in such instrument. By a further agreement, executed at the same time, under her and their respective hands and seals, and annexed to the last mentioned instrument, and referring to the same, it was mutually agreed that if they should not, within twenty days, make an amicable partition, between her, of the one part, and Jewett and Hess, of the other part, and execute mutual releases, that then W. Jay, A. Vark, and A. J. Constant, were, by such agreement, authorized to make such partition. And, in making the partition, the arbitrators were to take into consideration the relative value, as well as the quantity, of land to be allotted to the parties. It was also agreed that the partition made by the arbitrators, or any two of them, should be binding, and that the parties should carry the same into effect by executing mutual releases. The parties did not agree upon a partition between themselves, within the time specified. And in November thereafter they called upon the arbitrators to make such partition, under the agreement. The arbitrators thereupon met and examined the farm, and the several parts thereof, and made a partition of such farm pursuant to the submission, by a written award under their hands and seals in duplicate; one part of which award was delivered to each party. The award described the part of the premises set off to the

widow, by a reference to a map of the farm, made by A. Finlay, and the numbers of the lots; and awarded the residue, not thus set off to her, to the defendants. By the will of R. L. Hunt's father, under which he held the farm at the time of his death, the sisters of the devisee, while they remained unmarried, were entitled to the use of a certain part of the dwelling house upon that part of the premises which, in the partition, was set off to Mrs. Hunt; and to certain privileges in the garden and cellar. And as two of those sisters remained unmarried, the arbitrators took that charge into consideration in making the partition; and stated in their award, that in consequence of that charge they had set off more land to the widow than it would otherwise have been equitable to set off to her. After the making of the award the defendants refused to carry the partition into effect, or to execute a release, according to the terms of the submission. And the bill in this cause was thereupon filed, by Winship and his wife, to compel a specific performance of the agreement.

The defendants employed J. W. Tompkins as their solicitor to defend the suit; and they put in their answer, which was not sworn to, an answer on oath being waived by the complainants. In this answer the defendants admitted, that on the 17th of July, 1840, the parties were seised of the premises, as tenants in common, as stated in the bill. They also admitted the execution of the agreement as to the partition, which was signed by all of the parties; setting it out at length, but without setting out the instrument of the same date, to which it was annexed, or making any reference whatever to that instrument in their answer. And they then insisted, that by virtue of that submission the arbitrators were not authorized to make partition of the farm; because the submission did not describe any land, nor state in what proportions the parties to the submission were entitled. They also alleged, in their answer, that the arbitrators were not sworn, that they examined witnesses without oath, and in private; and setting up many other objections to the conduct of the arbitrators. The answer also stated that the arbitrators awarded to the widow about one half of the farm in value, that in making such an unequal and unjust partition the arbitrators had acted on

the erroneous impression, that the defendants had offered, or agreed to, such a partition ; and that the defendants objected to the award immediately after it was delivered to the parties, and that one of the arbitrators, who had signed the same, thereupon dissented. They further objected to the award upon the ground that it was not witnessed, proved, or acknowledged ; and they also stated in their answer, that subsequent to the submission, and even after the award, Mrs. Hunt, and she and her husband since her marriage, had used, possessed and occupied the greater part of the farm, and had cut wood on the same, &c. of which they claimed an account. A replication was thereupon filed. And the complainant's solicitor, after waiting nearly a year, entered an order to produce witnesses ; and served the same, and notice of examining witnesses on his part, and proceeded to take proofs. About three months thereafter he entered an order to close the proofs, and served the same on the defendants' solicitor. And at the expiration of about eight months from that time he noticed the cause for hearing, for February term, 1845. He then obtained a decree for the specific performance of the agreement, to carry into effect the partition and award, and that the parties should execute mutual releases and conveyances accordingly, with costs ; and referring it to a master to settle the form of such releases and conveyances ; and also referring it to the master to inquire and report what damages the complainants had sustained by the neglect of the defendants to perform the agreement to carry the partition into effect ; and directing the payment of such damages by the defendants, upon the coming in and confirmation of the master's report. The defendants' solicitor was thereupon summoned to attend the master, upon the reference, to settle the forms of the conveyances to be executed by the parties. He then obtained an order to stay the proceedings, and gave notice of an application before the vice chancellor, for the first Monday of March, to open the decree taken by default of the defendants at the hearing, and that they might have liberty to argue their cause. Upon the hearing of that application, the pleadings and proofs in the cause, as well as the papers upon which the motion was founded, were read and commented on by the counsel for

both parties; after which the vice chancellor denied the application, except that he directed that nothing in the decree should be so construed as to deprive the defendants of any rights they might have against the complainants for the rents, issues and profits received by them, or for waste committed upon the premises. The complainants' solicitor thereupon served the order denying the application, and took out and served a new summons to attend before the master. And he was proceeding to obtain an attachment against the defendants, for not executing the release settled by the master, when he received notice of another order to stay proceedings, and notice of a new application to the vice chancellor for an order vacating the decree, and the order to close the proofs, and to give the defendants time to examine their witnesses.

This application was founded upon an affidavit of Jewett, that he had stated his case to his counsel and believed he had a good defence upon the merits. And on an affidavit of the defendant Hess, that his solicitor did not give him any notice of the examination of the complainant's witness, and did not himself attend the examination; that it was well understood between him and his solicitor that the defendants were to examine certain witnesses to establish their defence, and among others W. Jay, one of the arbitrators; that his solicitor was to give him notice when the proper time arrived; that he had never received any notice whatever from his solicitor, on the subject of the suit, and did not see him until the 5th of April, 1845, and had no information that the proofs had been closed or the cause brought to argument until that time; that the bill was filed to carry into effect an award which the deponents *claimed* was invalid and inoperative, among other things, *by reason of the arbitrators having misapprehended the force and effect of the submission, and having proceeded upon erroneous principles in making the award, and under a mistake as to the material facts and circumstances;* by which great injustice had been done to the defendants, and by which they were wrongfully deprived of property to the amount of $5000, if the decree should be enforced; that as he was advised by counsel, and believed, the defendants had a good and

substantial defence on the merits; and that such defence had been defeated by the neglect of their solicitor, and would be unavailing unless the decree and the order to close the proofs should be vacated; and that any remedy they might have against their solicitor, for his neglect, would be doubtful, difficult and inadequate. There was also a further affidavit of Jewett, that he had heard the affidavit of Hess read, and believed the same to be true; that after putting in his answer he left the defence to the management of his co-defendant Hess, and that he had not seen or heard from his solicitor since the order to produce witnesses was entered; that his said solicitor advised them, before putting in their answer, that they had a good defence; and told him he should be notified when the witnesses were to be examined. Affidavits were read in opposition to the application, showing the great delay and expense to which the complainants had been subjected by the adverse parties; and which affidavits also showed that the solicitor for the defendants was perfectly responsible, for any amount which might be recovered against him by them for his supposed negligence. The vice chancellor, upon the hearing of that application, made an order vacating the decree and setting aside the order to close the proofs; and directing that either party be at liberty, within forty days, to examine such witnesses as they might deem proper, upon the usual notice, and that the defendants be at liberty to cross-examine the witnesses already examined. From this order the complainants appealed to the chancellor.

*W. Silliman,* for appellants. I. The affidavits of the defendants, on which their application was made, are grossly defective. 1. They do not set forth the nature of their defence nor in what it consists, and do not disclose any of the facts on which their supposed defence rests; hence they amount merely to an affidavit of merits. 2. The answer not being on oath, the defendants in their affidavits should have stated such portions of it as they would swear to be true; but they have not even alleged the answer to be true. 3. The affidavits should state the names of their witnesses, and especially what facts they can prove by

such witnesses.   An affidavit of a defendant in a suit in chancery that he has a good defence, without stating the nature and substance of such defence, is not sufficient.   (*Sea Ins. Co.* v. *Stebbins*, 8 *Paige*, 565.)   It is the settled practice of this court to require the party, in an affidavit of merits, to state what such merits are.   (*Meach* v. *Chappell*, 8 *Paige*, 136.)   The defendant must state in his affidavit or petition to open the default, the nature of his defence, and his belief in the truth of the matters constituting such defence.   (*Hunt* v. *Wallace*, 6 *Paige*, 372.)

II.  The defendants are bound by the acts, as well as the defaults of their solicitor.   (1 *Barbour's Ch. Pr.* 100.)   As a general rule, when a suit is commenced or defended by a solicitor of the court, or any proceeding is had therein, the court does not inquire into his authority to appear for his supposed client.  But where the party for whom the solicitor appears denies his authority, and applies to the court for relief, before the adverse party has acquired any rights or suffered any prejudice in consequence of the acts of such solicitor, the court may correct the proceedings and compel the solicitor to pay the costs to which the parties have been subjected in consequence of his improper interference. If the adverse party, however, has acquired any rights, or been subjected to costs, by proceeding in the name of a party who denies the authority of the attorney or solicitor who commenced such proceedings, and the attorney or solicitor is solvent and responsible, the court usually allows the proceedings to stand ; and leaves the party injured to his remedy against such attorney or solicitor.   (*The American Ins. Co.* v. *Oakley*, 9 *Paige*, 496.)

III.  It does not appear that the defendants had any defence, or that they have lost any thing by the supposed neglect of their solicitor.   1. All the material allegations in the bill are admitted by the answer.   2. The matters set up by way of defence, as far as facts are stated, do not amount to a defence; and had no replication been filed to the answer, the complainants were entitled to the decree entered.   3. The objection that the arbitrators were not sworn, nor the witnesses, cannot be raised successfully.   4. Wm. Jay could not revoke his award after the same

was signed by him and his co-arbitrators and delivered to the parties; his power having expired. An award cannot be impeached except for fraud or partiality in the arbitrators. (*Fitzpatrick* v. *Smith*, 1 *Desaus.* 245.) Awards cannot be set aside or impeached, unless for corruption, partiality or gross misbehavior of the arbitrators, or for some palpable mistake of the law or fact. (*Herrick* v. *Blair*, 1 *John. Ch.* 101. *Shermer* v. *Beale*, 1 *Wash.* 11. *Pleasants* v. *Ross*, *Id.* 156.) Affidavits may be introduced to show partiality or misbehavior in the arbitrators, but not mistakes in law or fact. (*Idem.*) Where there is no charge of corruption or misconduct in arbitrators, and the award on the face of it is final, nothing dehors the award can be pleaded or given in evidence to contradict it. If there is no charge of corruption, partiality or undue practice in the arbitrators, an award will not be set aside, however unreasonable or unjust it may be. (*Tidd* v. *Barlow*, 2 *John. Ch.* 551.) Change of opinion of one or all the arbitrators, after award returned, cannot affect the award. (*Cleveland* v. *Dixon*, 4 *J. J. Marsh.* 228.) Where a matter is referred to arbitrators by the mere act of the parties, without being made a rule of court, it is no ground of objection to their award, in an action to enforce it, that it is against law. (*Mitchell* v. *Bush*, 7 *Cowen*, 186, 7. *Jackson* v *Ambler*, 14 *John.* 105; 9 *id.* 212. *Kyd on Awards*, 185, 237, 238.) Where parties have power to transfer real property, arbitrators may award that they shall do it. (*Cox* v. *Jagger*, 2 *Cowen*, 638.) An arbitrator who has signed an award with his co-arbitrators, cannot be allowed to contradict this solemn act, and to say that he did not concur in it. The signing the report was an actual concurrence therein; and arbitrators are not permitted to make mental reservations in opposition to the written evidence of their decision, any more than a juror who has concurred in a general verdict would be permitted to swear he was not convinced it was right. (*Campbell* v. *Western*, 3 *Paige*, 137.) An arbitrator is an incompetent witness to impeach his award. (*Van Cortland* v. *Underhill*, 2 *John. Ch.* 349.) Nor can he be permitted to prove what transpired before him. (3 *Esp.* 38. *Bull. N. P.* 236. *Peake's N. P. C.* 6. 1 *Esp.* 143,

3 *id.* 113. 2 *Vern.* 717.) The declaration of one of the arbitrators, that had he seen a letter, which being mislaid at the time had not been proved, and had known the contents, he would have acted otherwise, is not sufficient to set aside an award on the ground of mistake. (*Anderson* v. *Darcy*, 18 *Ves.* 447.) Evidence to show that, by mistake, the arbitrators omitted to allow a demand, will not alter its effect, and is inadmissible. (*Newland* v. *Douglas*, 2 *John.* 62. *Barlow* v. *Todd*, 3 *id.* 367. *Wheeler* v. *Van Houten*, 12 *id.* 311.)

IV. Arbitrators cannot impeach their award, even by their own testimony. (*Campbell* v. *Western*, 3 *Paige*, 137. *Van Cortland* v. *Underhill*, 2 *John. Ch.* 347. 3 *Esp.* 38. *Bull. N. P.* 236. *Peake's N. P. C.* 6. 1 *Esp.* 143. 3 *id.* 113. 2 *Vern.* 717.) Fraud in the arbitrators is not pretended in this case, either by the answer of the defendants or their affidavits; nor is any fact stated showing mistake or error in the arbitrators.

V. It does not appear by the affidavits that J. W. Tompkins, the defendant's solicitor, is insolvent or unable to respond fully as to all damages the defendants pretend to have sustained. (*See The Amer. Ins. Co.* v. *Oakley*, 9 *Paige*, 496.)

VI. The complainants, confiding in the decree, have made expensive improvements on the share or part allotted to Mrs. Winship, and the court will not interfere in such a case.

VII. The defendants have been guilty of great delay in making the present application.

VIII. The defendants have applied once to set aside their default, and have been heard on such application; which application was denied and the decision submitted to by them. They therefore cannot renew it, except upon new facts.

*S. Barculo*, for respondents. I. It is a matter of discretion with the vice chancellor, whether he will open a default or not; and if he opens the default, this court ought not to interfere, unless he errs in the terms he imposes on opening it. II. It is proper to open a default after decree. (*Tripp* v. *Vincent*, 8 *Paige*, 180.) III. The answer, if proven, is sufficient to set aside and vacate the award. 1. The submission is wholly in-

Winship v. Jewett.

sufficient. 2. The arbitration was under the statute, and not at common law, and therefore the arbitrators should have been sworn. They should have heard counsel, and taken the proofs offered by the parties; and not having done either, their award was illegal. (2 *R. S.* 447. *Elmendorf* v. *Harris*, 23 *Wend.* 632. *Van Cortlandt* v. *Underhill,* 17 *John.* 408, 414.) IV. If the proceeding was at common law, then the respondents claim that the arbitrators must all agree, and the parties are entitled to be heard by counsel and produce witnesses. (*Green* v. *Miller*, 6 *John.* 39.) V. The proceeding was either at common law, or under the statute. The appellants cannot claim that it was mixed. VI. The arbitrators evidently made up their award under a mistake as to the facts, as appears from their confessions; and such an award, a court of equity would not enforce, unless corrected. (2 *Story's Eq.* 679, *and cases cited there.* 17 *John.* 405. 4 *John. Ch.* 408.) VII. The complainants themselves have not followed or obeyed the award; and they have no right to have it enforced, against the defendants, until they have done so.

THE CHANCELLOR. It is unnecessary to examine the question whether the vice chancellor could properly entertain a second motion, to open the decree in this case, while the order of the third of March, 1845, denying the first motion, remainea in full force; without asking for a rehearing of that application, in connection with the new matters disclosed by the subsequent affidavits. For, I think, there is not sufficient shown, in the affidavits on which the second application was founded, to induce a belief that the defendants had probably a meritorious defence to the suit. The answer states several acts of misconduct, on the part of the arbitrators, which, if true, might probably be sufficient to vitiate their award, on that ground. But the answer is not sworn to; and there is nothing in the affidavits to show that the defendants even believe those allegations, of misconduct on the part of the arbitrators, to be true. The general affidavit of one of the defendants, that he has stated his case truly to his counsel, and that he is advised by such counsel

and believes, that they have a good and substantial defence upon the merits, is not sufficient, in this court, to authorize the setting aside of a regular default or decree. But the party who wishes to obtain relief of that kind here, upon the ground that he has a meritorious defence, must state the substance of such defence in the affidavit, on which his application is founded, or must show the facts, upon oath, in some other form; so that the court may see what the alleged defence is, and be able to form an opinion whether he has a meritorious, or only a mere technical defence, or whether he has any defence whatever.

It is alleged, in the answer, that the arbitrators agreed upon by the parties to make the partition, were not sworn. And as that is urged here as an objection to the validity of the award, that alone may be the meritorious defence which the counsel of these defendants has advised them they have in this case. But if that is any defence whatever, it is merely technical; and this court ought not to open a regular order to close the proofs, and a decree founded thereon, to allow the defendants to prove such a defence. On the contrary, if it was proper to open the order to close the proofs for any other cause, the defendants should have been restricted from introducing any evidence to sustain such a technical objection to the validity of the award. For it would be wholly unjust, where parties have suffered the arbitrators to proceed, without requiring them to be sworn, afterwards to urge that they were not sworn, as an objection to the validity of their partition of the farm, because such parties are not satisfied with the decision; and when it was too late to obviate this technical objection, if it is one. (*See Allen* v. *Francis,* 9 *Lond. Jur. Rep.* 691.)

Nor does the affidavit of either defendant, where it attempts to set out what the defence really is, show that the award is invalid, for any other cause. The affidavit of Hess, merely states that they *claim* that the partition is invalid, and inoperative, by reason of the arbitrators having misapprehended the force and effect of the submission; and by making the award under a mistake as to material facts and circumstances, by which injustice has been done the defendants. In other words,

they claim that the award, as to the partition, is invalid, because the arbitrators have made an erroneous decision. That, however, would not vitiate the award. For it is well settled that the award, if made in good faith, is conclusive upon the parties.; and that neither of them can be permitted to prove that the arbitrators decided wrong, either as to the law or the facts of the case. (*Jackson* v. *Ambler*, 14 *John. Rep.* 105. *Mitchell* v. *Bush*, 7 *Cowen's Rep.* 185.) The question submitted to the arbitrators, in this case, was as to what parts of the farm, and how much thereof, should be assigned to the parties respectively. Of course they were to be the exclusive judges of the relative values of the several parcels. And the very object of the submission to them would be defeated by permitting the defendants to prove that the share of the farm assigned to them, by the award, was less than their proper proportion of the whole farm.

What the defendants mean, in their affidavits, by the arbitrators having misapprehended the force and effect of the submission, it is difficult to conjecture ; unless it relates to the objection set up in the answer, that the submission did not refer to any land, nor specify the extent of the interests of the respective parties in the property to be partitioned. But if it refers to that, the objection is obviated, by the proof of the fact, that the instrument attached to the submission, and making a part thereof, contained a sufficient description of the farm, and of the interests of the parties therein, as tenants in common. The instrument attached, being referred to in the submission, and executed at the same time, the two together formed the agreement for submission. And no one, from reading the two papers together, can have any doubt, without the aid of any extrinsic facts, what land was to be partitioned between the parties, or what undivided portion thereof belonged to each party. The testimony also shows that a part of the premises was encumbered by a privilege, in behalf of the sisters of the former owner of the land. And the arbitrators were right in taking that incumbrance into account, in making an equitable partition between the parties to the submission

Neither will it constitute any defence, if they are allowed to examine Judge Jay, to show that after the award had been published, he dissented from it. For, as Judge Vark and Judge Constant, the other two arbitrators, were, by the terms of the submission, authorized to make the partition without his consent, the withdrawal of his consent would not have availed the defendants, even if it had taken place before the award had passed beyond his control. And the defendants' solicitor having neglected to furnish a list of their witnesses, to the adverse party, before the commencement of the examination, as required by the rules of the court, it was improper to give the defendants leave to examine any witnesses they pleased; without any statement in their affidavits as to who their witnesses were, and what they expected to prove by them.

Being satisfied that if the defendants have any defence, in this case, it is merely technical, and not meritorious, and that after a regular decree, they ought not to be let in to set up such a defence, even if the objection is well taken that the arbitrators were not sworn, which is at least doubtful, I think these complainants ought not to have been subjected to the delay and expense of further litigation under the circumstances of this case. I must, therefore, reverse the order appealed from, with costs. And the application of the defendants to vacate the decree, and to open the order to close the proofs, must be denied, with costs to be taxed.