THOMAS D. WIBERLY, Appellant, *against* JAMES BRANDER MATTHEWS, Respondent.

(Decided January 3d, 1881.)

Parties to a building contract agreed to submit disputes in regard to allowances for extra work done or materials furnished, or deductions for work not done or materials not furnished, or any other matters in dispute under the contract, to one of the architects under whose supervision, by the terms of the contract, the work had been done, and who had himself accurate and full knowledge of the items and extent of the extra work done and of the extra materials furnished, and their value, and was equally familiar with the omitted work, and knew the cost of it. The arbitrator thus appointed, without giving notice to the parties of any time or place for hearing them, and not having been sworn or taken any proofs, awarded that the contractor was entitled to a certain sum from the owner of the building. *Held,* that the submission was valid and binding upon the parties ; that the requisites of an oath by the arbitrator, notice to the parties of the time and place of hearing, and.the taking of proofs, may be waived by the parties ; that such waiver was to be implied in this case, as it was evident from the facts, and particularly from the conduct of both parties, that the arbitrator was relied upon by each as an expert who was to ascertain, by a personal inspection of the building, the amount and value of the omissions from the contract, and of the extra work and materials, and, having done this, was then to settle finally between them how much was to be paid, and that his award was valid, and a bar to a subsequent action for an amount claimed to be due under the contract.

APPEAL from a judgment of this court, entered upon the report of a referee.

Wiberly *v.* Matthews.

The facts are stated in the following opinion of Hon. J. S. Bosworth, the referee.

The complaint alleges that one Thomas Drummond, between the 26th of October, 1876, and the 4th of June, 1877, at the request of the defendant, performed for him work and labor, and furnished materials to and for him " to be used in building a building in the City of New York," and that the defendant promised to pay what such labor and materials were reasonably worth ; that they were worth $3,317.70; and claims that such amount is due, with interest from June 4th, 1877. It alleges that Drummond thereafter duly assigned the claim to the plaintiff, and judgment is asked for $3,317.70, with interest from June 4th, 1877. The assignment is dated October 1st, 1877.

The answer alleges: First—That Drummond about the day of October, 1876, entered into a written contract with the defendant, by which Drummond agreed to furnish work and materials for and complete No. 452 Broadway, for a stipulated sum ; that during the performance of the contract, Drummond agreed to perform extra work and furnish extra materials, being the extra work and materials named in the complaint ; that Drummond did not do all the work or furnish all the materials required by the contract of October    , 1876, and did not do the extra work and furnish the extra materials as requested, and that a dispute arose between them ; and that, in order to put an end to the same, the defendant and Drummond, by an agreement dated June 14th, 1877, submitted the matters to the arbitration of Emile Gruwé, and that the said arbitrator made his award on the 18th of June, 1877, to the effect that Drummond was entitled to receive $893.05, exclusive of the balance due on the contract of October, 1876, and that such submission and award embraces all the matters mentioned in the complaint ; that the defendant paid to Drummond the full amount due to him on his contract, and tendered payment of the $893.05, awarded to Drummond, which he refused to receive. Second—By way of counter-claim, the defendant alleges non-performance by Drummond of the contract of October    , 1876 ; alleges that work required by the contract was omitted, and that the value

Wiberly *v.* Matthews.

of the extra work and materials is less than the amount of damages sustained by the defendant, and claims to set off the damages against any amount that it may be found the extra work and materials were worth.

" The plaintiff for reply to the answer, alleges that this plaintiff denies each and every allegation contained and set forth in said answer by way of counter-claim, and this plaintiff denies that the defendant has any counter-claim or set-off to the claim of the plaintiff in this action."

By the contract of October 20th, 1876, Drummond agrees to " erect and finish the new building, 452 Broadway," for $25,000.

The *fifth* article of this contract provides that any dispute as to " the true construction or meaning of the drawings and specifications " shall be decided by Schweizer & Gruwé (the architects), but should any dispute arise respecting the true value of the extra work, or of the works omitted, the same shall be valued by two competent persons, one employed by the owner, and the other by the contractor, and those two shall have power to name an umpire, whose decision shall be binding upon all parties."

This contract having been put in evidence by the plaintiff, the defendant claims that by the legal force and effect of the fifth article of the contract, a valuation of the extra work in the manner provided thereby is a condition precedent to his right to maintain an action to recover the value thereof. To this it may be replied, that the answer does not set up any such defense; it does not aver that the contract which it states was made contained any such clause or provisions as is expressed by the *fifth* article thereof. The answer does allege " that said Drummond did not perform the conditions on his part in said contract contained, and did not complete said work in a good and workmanlike manner, but failed to do various portions of said work, and to supply various materials in accordance with said contract, and to comply with other stipulations thereof." Non-completion of the work in a good and workmanlike manner, and a failure to supply various materials, and to comply with other stipulations, are the defendant's

specifications of non-performance by Drummond of conditions to be performed by him.   They all relate, either to not doing what the contract required him to do in erecting .the building, in the manner required by the contract, or to the omission of some things which by the contract he was to do to complete the building.

I do not think that this case is like *President, &c. Delaware, &c. Canal Co.* v. *Pennsylvania Coal Co.* (50 N. Y. 250).

By the agreement in the case cited, the additional toll to be paid after the enlargement of the canal, at a rate per ton of 2,240 lbs., was " to be established after the completion of the said enlargement in the manner following." This rate when established was to regulate a future continuous business. In view of the peculiar terms of the instrument, and of the subject matter of the agreement, the court held that the prescribed mode of adjustment and settlement of the rate is a part of the agreement for the additional toll, and modifies and qualifies the right, so that the right does not attach until the same is established  (Id. 263).

In the case before us, the *fifth* article of the contract in question is a separate and independent covenant, to settle all disputes and differences by arbitration, or in the modes therein specified.   It is difficult to discriminate between this case and those of *Kill* v. *Hollister* (1 Wils. 129), and *Thompson* v. *Charnock* (8 T. R. 139).   The Court of Appeals, as I understand the opinion (50 N. Y. 266), does not intimate that in cases like those the rule there enforced should not be followed.

I think the parties to that contract mutually waived the *fifth* article thereof, by their written agreement to submit their matters of difference to the arbitration of Emile Gruwé; that agreement was made June 14th, 1877.

Hence the next important question is—what is the legal effect of the award made by Gruwé?

It is entirely clear upon the evidence, that the arbitrator (Gruwé) did not notify the parties to the submission of any time and place when and where he would hear them in respect to the matters submitted.   This omission is fatal to the

Wiberly *v.* Matthews.

validity of the award, unless the parties waived such notice, and left the matters in controversy to the arbitrator, to be decided by him on his knowledge of the facts (*Elmendorf* v. *Harris*, 23 Wend. 628.).

The arbitrator in this case may be regarded as an expert arbitrator. He had as accurate and full knowledge of the items and extent of the extra work done and the extra materials furnished by Drummond, as Drummond had. He knew the value of the extra materials furnished, and the value and amount of the extra labor performed. He was equally familiar with the omitted work. The building was to be, and was erected and completed under his supervision as an architect. The work for which the plaintiff, as Drummond's assignee, claims to recover was done almost wholly by his order as such architect; so Mr. Drummond in substance testifies. He was familiar with the omitted work, and knew the cost of it. A man with such knowledge, assuming that he would act impartially between the parties, might well be supposed capable of doing as full justice between them as could be expected to result from any action at law, prosecuted to judgment, according to the course and practice of the court.

It is quite clear from Mr. Drummond's testimony, that he did not expect that there was to be or would be any formal hearing before the arbitrator, or that the parties would be notified to appear before him for a hearing of the matters submitted. He presented to the arbitrator a copy of the account, or bill of items of extra work and materials, which was given in evidence on this trial. He testified that before the submission was signed, he and Mr. Gruwé went over this account, and that Mr. Gruwé claimed that some of the items were charged too high, and that he and Gruwé agreed upon deductions to be made, amounting together to over $300, and that Gruwé agreed that if the matter was submitted to him, he would report the balance of the account for extra work as due to Drummond. Gruwé denies that he so agreed, but Drummond swears that he did, and believing this, and that Gruwé would so award, there was no object in his making proof of what he had done and furnished extra, or of the value thereof. It is also clear that

he did not desire or expect to be heard before the arbitrator, in respect to the omitted work. The arbitrator understood everything relating to it, and Drummond expected that he would act on that knowledge. He testifies in substance, that before the award was made he asked Gruwé why he did not report, or how soon he would report, and that a day or possibly two days before the award was delivered, he was at Gruwé's office, and he then told Drummond that he was drawing his report, or was making it up.

It is therefore incontestible, as I think, upon Drummond's testimony, that he did not desire or expect any other hearing than such a one as he had had ; and he was inquiring when the report or award would be made, understanding that all the hearing had been had which either party expected, or had a right to expect, as a preliminary to making the award. The defendant laid before the arbitrator his claim for omitted work, and that was all that he desired or expected to do. He knew what Mr. Drummond claimed for extra work. If it had been expressly agreed in the submission that the arbitrator should examine and decide upon the matters in controversy, upon his knowledge of the facts, he having full knowledge thereof, and that his decision should be final, it cannot be doubted, as I think, that an award of the arbitrator, free from fraud, would be conclusive.

It is not thus stipulated or agreed in the submission. But it is clear, as I think, that it was well understood between the parties that such was to be the character of the arbitration ; and it is also clear, as I think, that just such an arbitration was had in all that relates to the proceedings before the arbitrator, as both parties expected and desired. Drummond, who alone (through the plaintiff, as his assignee) complains of the award, shows by his testimony that the method of procedure before the arbitrator was all that he desired or expected.

In *Brazill* v. *Isham* (12 N. Y. 15), GARDINER, Ch. J., states as elementary law, that " A person, undoubtedly, may be selected to state an account between men, who agree to abide by his report. On such a case the report would have the same effect as though the parties had themselves stated the account,

and agreed upon the balance." (See Morse on Arbitration, 143, 144.)

It is competent to the parties to waive any notice, to which, by the legal import of the submission, they would be entitled. They may waive acts, which, if not waived, would be sufficient cause for setting the award aside.

In *Fudickar* v. *Guardian Mutual Life Ins. Co.* (62 N. Y. 392), the arbitrator, after the case had been substantially closed, wrote to one party for a statement of facts affecting the merits (Id. 395), but before sending it the plaintiff was notified of what the arbitrator intended to do, and the reply was shown to the plaintiff, and the arbitrator promised him an opportunity to give answering evidence, provided the arbitrator concluded to use the statement. The arbitrator after that advised the plaintiff that he should not use the statement, and reported that he had utterly ignored it. The court held (Id. 405), that it was the duty of the plaintiff to object to this proceeding when informed of it, if he did not approve of it, and said that " he ought not to be permitted, after having lain by and taken the chance of a favorable award, to object when he finds the award against him."

It is stated in Morse on Arbitration (143), that " if a person is selected as an arbitrator by reason of some special knowledge or skill possessed by him with reference to the matter in controversy, so that it is apparent that the parties intended to rely upon his personal information, investigation and judgment, it may be that he will be justified in refusing altogether to hear evidence."

In this case, there was not any refusal, or failure to hear all the evidence which either party wished to give, or all the suggestions, criticisms, or statements which either party wished to make.

The objection to the validity of the award is, that the arbitrator did not notify the parties of a time and place when he would hear them in reference to the matters in controversy.

It being clear that the arbitrator was selected by reason of his thorough knowledge of all the matters in controversy, and his entire competency to do justice to the parties on account of

his knowledge of all the items of claim on either side, and of their value, and that they intended to rely upon his personal information, investigation and judgment, and to be bound by his decision formed upon such personal information, investigation and judgment, and that neither party expected or desired any formal hearing, I think it is too late to object now that no formal notice of a hearing was given. If either party intended to claim that such a notice should be given, he should have so stated to the arbitrator; Drummond should not be permitted, after urging the arbitrator to make his award, and knowing that neither party expected any such notice, to lay by and take the chance of a favorable award, to object on this ground after he finds that the award is against him.

I think, therefore, that Mr. Drummond (and the plaintiff as his assignee) is concluded by the award, unless it is impeachable for the fraud or corruption of the arbitrator, or by reason of some mistake apparent on its face.

There is no evidence tending to establish any fraud or corruption on the part of the arbitrator touching the award, unless it be found in the testimony of Mr. Drummond, to the effect that Gruwé promised him, that if Gruwé was selected arbitrator, he would report in Mr. Drummond's favor the amount of his bill for extra work, less the amount of deductions upon which (as Mr. Drummond testifies) he and Mr. Gruwé had agreed. This testimony is flatly contradicted by Mr. Gruwé.

Gruwé testifies, that before the award was made "Mr. Drummond stated that there should be no trouble about this matter of extra work; that he would send a $500 bill to a little boy in Hoboken, if I would pass the bill. I happened to live in Hoboken. Q. That was before you had given your award. A. Yes, sir." Drummond pointedly denies having said this. One or the other of them testifies untruly. Any one who would make such a promise as Drummond says Gruwé did, is not fit to be an arbitrator, and any party to an arbitration, who would enter into a submission to arbitrate on being induced to do so by such a promise, presents himself in an unpleasant attitude before the court.

Wiberly v. Matthews.

There is no evidence of any prejudice or partiality on the part of the arbitrator adverse to Drummond, unless the evidence given on this trial tends to show that the arbitrator could not reach the conclusions stated in his award, otherwise than by yielding to strong prejudice against Drummond, or great partiality in favor of the defendant.

If an action had been tried before a court and jury, and a verdict had been rendered in Drummond's favor for $893.05 on just such evidence as has been given on this trial, I do not think it would be set aside as being clearly contrary to or unsustained by the evidence. The award concludes thus : " I hereby decide that Thomas Drummond is entitled to a sum of ($893.05) eight hundred and ninety-three dollars and five cents, exclusive of balance due on contract."

| | |
|---|---|
| Extra work and materials furnished | $2,265 25 |
| Work not done, and materials omitted | $1,362 20 |

$893 05

Em. Gruwé.

The extra work and materials, as footed up on exhibit 1, amount to $3,317.70. The complaint claims that to be their value.

| | |
|---|---|
| If from          -     -     -     -     -     -     - | $3,317 70 |
| there be deducted the amount found by the award | 2,265 25 |

| | |
|---|---|
| The difference is -     -     -     -     -     -     - | $1,052 45 |

Drummond testifies, that he and Gruwé agreed upon deductions amounting to     -     -     -     - 340 00

The award allows to Drummond     -     -     - $712 45 less than the amount which he testifies that he and Gruwé had agreed upon before the submission to arbitration was signed.

Upon the evidence given on the trial, I think the item " For connecting steam-pipes with the boiler, engine, elevator and pump, $295," should be wholly disallowed. Drummond testifies that he and Gruwé agreed upon this at $260, Drummond consenting to a deduction of $35 from the charge of $295. I think it should be disallowed, because it is a part of the contract work, being included in the " Specification of

Steam-heating," and because the work was done by Elder &
Hudson, by the defendant's direction, and the defendant paid
them $260 for doing it.   The ground on which the plaintiff
claims this item, and the evidence in support of it, are un-
satisfactory.   The item "for planking up the south wall in
rear, $200," should, I think, be wholly disallowed.   Drum-
mond says he agreed with Gruwé to deduct $100 from this
charge, and I think the other $100 should be disallowed.
This is not, in proper sense, extra work.   The planking up
was done to keep out the rain, and enable the workmen to
work inside in stormy weather.   Gruwé says, "that when he
and Drummond looked over the bill of extra work, he insisted
that this item should be disallowed."   The charge for labor
employed in doing the planking is a trifling part of the whole
charge.   The plank which Drummond used, he sold.   I do not
perceive any just grounds for sustaining any part of this charge.

The item "for building flue on north wall, &c," is at least
$200 too large, as the wall of the building formed one side of
the flue.   Drummond should be allowed for only the brick
required for the front and sides of the flue.   He used old
brick taken out of the building pulled down.   It is, to say the
least, doubtful whether they were not the property of the de-
fendant.   But assuming them to be the property of Drum-
mond, $12 per 1,000 was a large price for them, and at that
rate the building of the flue would not be worth over $252,
and it is doubtful upon the evidence whether it would be
worth that.

These further deductions added together  make  $560 00
which being deducted from     -     -     -     -       712 45

would leave     -     -     -     -     -     -     -     $152 45

There are other items upon which upon the evidence
further reductions should be made, which I do not deem it
important to consider critically with a view to the point now
being discussed, viz. : whether a verdict for the amount of the
award upon just such evidence as has been given on this trial
could be set aside as unsupported by the evidence.   If the

views here presented are correct, it does not appear that injustice was done to Mr. Drummond in allowing him only $2,265.25 for extra work and materials.

Does it appear clearly, that $1,362.20, charged against him by the arbitrator for " work not done, and materials omitted," was excessive?

On this question Mr. Drummond takes the singular position, that for omitted work, by agreement between him and Gruwé, he did other extra work besides that for which this suit is brought, and which was accepted as substitute for the omitted work. The singular position consists, in part, in this, that the omitted work, according to Drummond's testimony, was of the value of only - - - - - $268 22
while the substituted work was worth - - - 638 37
including $200 of damages claimed for " delaying his work, by a sale by the defendant of the southerly party wall of 452 Broadway, taking down, setting and furnishing cast-iron columns—30 days," and without this item to $438.69. Mr. Gruwé denies the existence of any such agreement, but testifies that he said to Drummond that the extra work he was doing would be an offset against the omitted work.

Gruwé testifies that he made out a bill of items of the omitted work, affixed to them their values, amounting to $1,362.20, and talked with Drummond about all the items, and he thinks he gave Drummond a copy of it, but will not be certain ; that this was a precise estimate of the work omitted, and that he handed the originals to Mr. Matthews and Mr. Drummond. A verdict on Gruwé's testimony, given on this trial, as · to the items and value of the omitted work, finding it to be worth $1,362.20, I think, would not be set aside as contrary to evidence. The only adverse testimony is that of Mr. Drummond, and in whatever good faith it may have been given, is quite loose and unsatisfactory. The theory that he did extra work, not charged as extra work, worth at least $438.69, as a substitute for omitted work, worth only $268.22, I cannot accept.

The justice of the award, if the merits were open to investigation, is not impeached. I understand that the award,

if valid, is a bar to this action. If held to be valid and a bar, and on appeal that view should be deemed erroneous, the court, though reversing the judgment, might be compelled to award a new trial, if, upon the facts found, the referee should have reported in favor of the plaintiff. I think, upon the whole evidence, that the extra work is worth - $2,265 25 and that the value of the work omitted is - $1,362 20

For the balance - - - - - - $893 05 with interest to the date of the report, the plaintiff should have judgment, unless the award is a bar to this action.

If the court should think that it is not, then on the facts found I do not perceive why judgment should not be given for the plaintiff for the amount found due, unless he should prefer a new trial, and to take his chance of recovering more. I have reached the conclusion, though not without some hesitation, that the award is valid, and a bar to this action.

Judgment for the defendant was entered upon the referee's report. From the judgment the plaintiff appealed.

*H. T. Cleveland,* for appellant.

*W. D. Hennen,* for respondent.

CHARLES P. DALY, Chief Justice.—The oath of the arbitrator could be waived by the parties; and, that it was waived may, I think, be implied from the facts and circumstances of this case (*Browning* v. *Wheeler,* 24 Wend. 259; *Winship* v. *Jewett,* 1 Barb. Ch. 183; *Howard* v. *Sexton,* 1 Den. 440; *Day* v. *Hammond,* 57 N. Y. 483; *Nason* v. *Ludington,* 8 Daly, 149).

The submission was for the purpose of ascertaining the amount to be paid under the contract, as there was extra work, for which an allowance was to be made, and omissions, for which there was to be a deduction; and it is well settled that such a submission is valid and binding upon the parties (*Pres't. &c. Delaware, &c. Canal Co.* v. *Pennsylvania Coal Co.,* 50 N. Y. 250; *Scott* v. *Avery,* 5 H. of L. Cas. 811).

In respect to the objection upon which the appellant main-

ly relies, that the award was made by the arbitrator, without notifying the parties of any time and place when and where he would give them a hearing upon the matter submitted ; it is sufficient to state, that although this is requisite to the validity of an award, it may be waived by the parties (*Elmendorf* v. *Harris*, 23 Wend. 632), and is waived, where it was plainly the intention of the parties that there was to be no hearing, which, I think is manifest in this case, as the arbitrator was one of the architects under whose supervision, by the terms of the contract, the building was erected, and who, it is evident from the facts, and the conduct of both parties, was relied upon, by each, as an expert, who was to ascertain, by a personal inspection of the building, the amount and value of the omissions from the contract, and of the extra work ; and having done this, was then to settle finally between them, how much was to be paid by Matthews to Drummond.

Indeed, I am so thoroughly satisfied of the correctness of the finding of the learned referee, as to the facts and the law, that I prefer to adopt his opinion, as conveying my own view of this case, as concisely and as clearly as I could express it in words.

The judgment given on the report of the referee should be affirmed.

J. F. DALY and VAN HOESEN, JJ., concurred.

Judgment affirmed.*

---

* The judgment entered upon this decision was affirmed by the Court of Appeals January 23d, 1883 (see 91 N. Y. 650).