## WALKER *vs.* WALKER.

1. The parties to an arbitration are entitled to reasonable notice of the sittings of the umpire.
2. And if one of the parties does not receive such notice, and the umpire and arbitrators hear the other party, and the umpirage is in favor of the latter, and he insist upon the umpirage, the want of such notice will be a fraud in him, at least, if not in the arbitrators and umpire, on the former party.
5. When an award is good in part and bad in part, if the bad part is separable from the good, and is not a condition of the good and is favorable to the party insisting upon the validity of the good part, the good part will be upheld, unless there is in the way some clause in the submission.
4. If in such a case the award be on a condition, yet if the condition be confined to the bad part, the effect of the condition will be confined to that part.
5. If in such a case the award be incomplete, yet if the incompleteness be as to matters belonging to the void part, the effect of the incompleteness will be confined to that part.

Arbitration and Award, in Upson superior court. Decision by Judge CABANISS, at May adjourned Term, 1858.

James S. Walker and others, children and heirs at law of William W. Walker, deceased, filed their bill in equity against Nathaniel F. Walker, as executor of Allen M. Walker, deceased, and in his own right, for an account and settlement of the estate of their father which came into the hands of said Allen M. Walker, as administrator of said William W. Walker, deceased, and who was also the guardian of complainants, during their minority.

Pending this cause in the superior court of Upson county, the parties entered into the following agreement to submit the case to arbitration, viz:

Whereas, a matter of controversy is pending in equity in Upson superior court, between James S. Walker, Free-

Walker vs. Walker.

man Walker and Frances C. Walker, complainants, and Nathaniel F. Walker, in his individual capacity, and also as the executor of the nuncupative will of Allen M. Walker, deceased, though not yet made a party defendant, which involves questions of law and fact; the latter to be ascertained by lengthy calculations, and the parties believing that the same can be settled more correctly by submitting them to arbitrators chosen by the parties, than by submitting said cause to a jury, do hereby enter into the following agreement : The parties agree to submit the case made by the bill, answer and replication filed, in said cause, in its totality, to two arbitrators to be chosen by the parties, and that the parties shall have the right to adduce all legal proofs pertinent to all the issues made as though the cause were on trial before a court and jury.

The pleadings in said case if not complete, shall be made so with all convenient dispatch, and if the defendant should desire to file a cross bill he shall do so with as little delay as possible, and the complainants shall as soon as practicable file their answer thereto, and the same shall go to the arbitrators, with the other pleadings in the cause.

The parties agree that Thomas P. Stubbs, Esq., shall be the arbitrator selected by the complainants, and Washington Poe, Esq., shall serve, as the arbitrator chosen by defendant, and that these two shall have the power of selecting an umpire to decide all questions of law and fact, upon which they may not be able to agree. The parties hereby further agree that Joel Mathews, Esq., of the county of Upson, shall act as commissioner, to take testimony in said cause, to be used before the arbitrators. The party desiring to take the testimony of a witness shall make out written interrogatories and file the same, with the commissioner giving the adverse party notice thereof, together with a copy of said interrogatories, (unless copy and notice should be waived) on the day of filing.

Notice shall also be given of the time and place of the examination of the witnesses, which shall be at least ten days from the time of filing the interrogatories with the commissioner.

Each party shall be allowed by himself or attorney to be present at the execution of the interrogatories, and shall be allowed to suggest other questions to the commissioner. The answers shall be sworn to and taken down in writing by the commissioner, signed by the witnesses and attested by the commissioner, and the whole being sealed up shall be directed to the arbitrators, by whom they shall be opened under such rules as they may adopt.

The arbitrators shall sit at Thomaston, Georgia, after giving the parties ten days notice of the time of such meeting, and shall proceed to try said cause upon the evidence submitted to them. There shall be no continuance except for providential cause, except in the sound discretion of the arbitrators. The rules of practice as to argument of counsel, which obtain in the courts shall be observed.

The parties having closed, the arbitrators, assisted if need be, by an umpire chosen as aforesaid, shall proceed to make an award within thirty days after the cause is finally submitted to them, which shall be binding except for fraud.

The parties agree that the award shall be entered upon the minutes of Upson superior court, and at the November Term, 1856, if possible, and that judgment shall be entered up for the sum awarded, and that the costs in said cause shall be paid under and according to said award.

When the agreement shall be signed by the parties, and the arbitrators shall have accepted the trust, the power hereby conferred upon them, shall be considered irrevocable. And if after their acceptance, either arbitrator, from providential cause, be unable to discharge the duties

Walker vs. Walker.

of the trust, the party whose arbitrator shall become thus unable, shall within twenty days from the happening of such providential cause, choose another arbitrator to act in his place, and in default of such choice the remaining arbitrator shall have the power to fill such vacancy. The parties shall proceed to make up the testimony, and to prepare the case for trial at as early a day as practicable, and shall by the twentieth day of October next notify the arbitrators of their readiness to proceed with the trial, (unless providentially hindered,) and the parties and arbitrators shall so direct the case as to have the award ready to be entered on the minutes of Upson superior court at the term heretofore specified, if possible.

The bill filed in said cause was filed by complainants against Jesse L. Owen as the executor of the estate of Allen M. Walker, deceased, and the said Nathaniel F. Walker, and the said Jesse L. having departed this life, and the said Nathaniel F. having been qualified as executor of said estate, but not yet made a party, it is agreed by the parties that the said Nathaniel F. shall be bound in his representative capacity by said award as though he had been made a party to said bill. To be signed before binding, by the parties themselves.

August 16th, 1856.

O. C. GIBSON, Def'ts Attorney.

J. M. SMITH, Comp's Attorney.

Signed by the parties 9th Sept. 1856.

Attest,                    JAMES S. WALKER.

J. M. SMITH.              FREEMAN WALKER.

FANNIE C. WALKER.

N. F. WALKER, Ex'r.

N. F. WALKER.

Under this submission the arbitrators made the following award:

MACON, GA., January 7th, 1857.

We, the arbitrators to whom was referred the matter

of difference between the parties set forth in the above submission, after hearing all the testimony on both sides, and after argument of counsel being fully had, find and award as follows, to-wit:

1. We find that no sufficient proof has been submitted to us, to authorize or justify us in charging defendant with the value of the two lots of land, lying somewhere in south-western Georgia, (the numbers and other description not given,) and the proof as to the value, being, in our opinion, vague and indefinite; therefore as to said two lots of land, we find and award in favor of defendant.

2. As to the hire of Hannah and her children, that question or matter having, on motion of defendant's counsel, been stricken out from the bill, we ratify and re-affirm our judgment as to said Hannah and her children, and now refer to the same.

As to all other matters submitted to us, (except as to the amount of money on hand at the death of William W. Walker, and as to which, we have called in the Hon. Eugenius A. Nisbet, as umpire,) we find and award as follows:

1st. We find and award in favor of the complainant, James S. Walker, the sum of ($20,629 19,) twenty thousand six hundred and twenty-nine dollars and nineteen cents, with interest thereon from the first day of January, 1857.

2d. We find in favor of the complainant, Nathaniel Freeman Walker the sum of ($20,585 48,) twenty thousand five hundred and eighty-five dollars and forty-eight cents, with interest thereon from the first day of January, 1857.

3d. We find and award in favor of complainant, Frances Charity Walker, (who sues by her guardian, Thomas W. Goode,) the sum of fourteen thousand, nine hundred and forty-eight dollars and ninety-seven cents, ($14,948 97,) with interest thereon, from the first day of January,

1857, with costs of suit in this cause, to be levied of the goods and chattels, rights and credits, lands and tenements in the hands of the legal representative, (the defendant,) of Allen M. Walker, to be by him administered. Here the arbitrators called in the Honorable Eugenius A. Nesbit, as umpire in the cause, and adjourned the further proceeding of this cause until Saturday next, at 12 o'clock, M., this 7th January, 1857.

THOMAS P. STUBBS, Arbitrator.
WASHINGTON POE, Arbitrator.

MACON, GA., 10th January, 1857.

The arbitrators having differed and disagreed as to the amount of money on hand at the death of William W. Walker, which came to the hands of Allen M. Walker, as his administrator :

The said Washington Poe being of opinion that there was no sufficient evidence submitted to them to authorize or justify the arbitrators in charging defendant with a greater amount of cash on hand than is returned by Allen M. Walker, to-wit: $3,200, and Thomas P. Stubbs differing in opinion with him, they unite and agree in calling in the Hon. Eugenius A. Nesbit, as umpire, and on this day after due notice to counsel on both sides met at 12 o'clock, M., at Macon, at the office of Stubbs, Hill & Tracy, according to adjournment, and said Nesbit being present and consenting to act as umpire, and after argument and a careful review of all the testimony taken in the cause, the said Eugenius A. Nesbit and said Thomas P. Stubbs, find the sum, after deducting one-fourth of the award shown to be $5250,00 : that is, on hand............$7000,00

Less one-fourth...................................... 1750,00

Due to complainants...................................$5250,00

Which, with interest added as calculated by us at the rate agreed upon, makes the sum due on the first day of

10

January, (1857,) eighteen hundred and fifty-seven, of ($24,547,00) twenty-four thousand five hundred and forty-seven dollars, which sum we find and award in favor of the three complainants; that is, the sum of eight thousand one hundred and eighty-two dollars and thirty-three cents in favor of each of said three complainants.

This last finding and award upon condition that the said complainants do pay the compensation of the arbitrators and umpire in this cause, which said compensation so to be paid, they by the authority vested in them by consent of counsel on both sides, fix, and determine as follows, to be paid out of said fund:

To Washington Poe, ($1000,00,) one thousand dollars.
To Thos. P. Stubbs, ($1000,00) one thousand dollars.
To Eugenius A. Nesbit ($500,) five hundred dollars.

The amount of money first aforesaid, to-wit: $24,547,00 to be levied of the goods and chattels, rights and credits, lands and tenements of Allen M. Walker, in the hands of defendant his legal representative to be administered.

And to all this the said Eugenius A. Nesbit and Thos. P. Stubbs agree.

THOMAS P. STUBBS, Arbitrator.
E. A. NESBIT, Umpire.

Washington Poe consents to the above so far as the compensation of arbitrators and umpire is concerned. We, Thomas P. Stubbs and Washington Poe, find and award in favor of our clerk, Mathew H. Sandwich, the sum of one hundred dollars, one-half to be paid by defendant and the other half by complainants, 10th January, 1857.

WASHINGTON POE, Arbitrator.
THOS. P. STUBBS, Arbitrator.

Upon the coming in of this award, and upon motion by complainant's solicitors to enter the same on the minutes and make it the judgment of the court, solicitors for defendant filed their exceptions to said award and to its

Walker vs. Walker.

being entered on said minutes and made the judgment of the court. Evidence was introduced on both sides in support of the motion and exceptions, and after hearing the same and. argument, the court made the following order : Whereupon it is ordered by the court that the award be entered on the minutes of the court, and that that part which was made by the arbitrators, Washington Poe and Thomas P. Stubbs, Esqs., on the 7th day of January, 1857, be made the judgment of the court, and that execution issue in favor of the complainants for the amounts respectively awarded to them : And it is ordered that that part of the award made by Thomas P. Stubbs, Esq., one of the arbitrators, and the umpire E. A. Nesbit, be set aside, and that complainants' solicitors have leave to enter judgment in accordance with this order.

To this order and judgment both parties excepted.

JAMES M. SMITH, B. HULL, A. H. CHAPPELL, and JOHN J. FLOYD, for complainants.

O. C. GIBSON, W. H. HULL, T. R. R. COBB, and J. W. GREEN, for defendants.

*By the Court.*—BENNING, J., delivering the opinion.

The first question is, was the judgment right, rendered on the motion to enter the award on the minutes of the court, and to make it the judgment of the court ? This question depends on the force of the objections to the award.

Those objections were numerous ; the more important of them will be first considered. These may be reduced to three.

1. That N. F. Walker did not have "timely notice" of the meeting at which the umpire acted ; and that in the absence of him and his counsel, the counsel of the opposite party were heard.

2. That the award was on a condition.

3. That the award was incomplete, being silent as to the demands set up against N. F. Walker, individually.

What was the force of the first of these objections? This question obviously involves several others. These I will take up in their order.

First, then, was N. F. Walker, *entitled* to a notice of the meeting, at which the umpire acted.

1. It is a general rule of the common law that the parties are entitled to notice of the meetings of the arbitrators. Anon. 1, Salk. 71. Watson on Arb. 171–2. Russ. on Arb, 191, 169. Indeed, that this proposition is true, was not disputed.

And if it be true that the parties are entitled to notice of the meetings of the arbitrators, it must be equally true that they are entitled to notice of the sittings of the umpire. "The umpire when called upon to act, is in general invested with the same powers as the arbitrators, and bound by the same rules, and has to perform the same duties." Russ. Arb., 230. In re Salkeld and Slatio, 12, Ad. and Ellis, 767, 4 Dall. 232.

Is there any thing to take the present case out of the common law rule? Have the parties agreed to dispense with the rule? There is no evidence that they have. There is nothing in the submission to show that they have. The submission is silent on the subject. Its language is, "the parties having closed, the arbitrators assisted, if need be, by an umpire chosen as aforesaid, shall proceed to make an award within thirty days after the cause is finally submitted to them." This language is somewhat peculiar. It is not this—the parties having closed, the arbitrators shall make their award within thirty days afterwards, but it is this—the parties having closed, the arbitrators shall make their award within thirty days after the cause is *finally submitted* to them. Here is room for an implication, that closing the cause by the par-

ties, was not finally submitting it to the arbitrators, but was only submitting it to them subject to be resumed if an umpire was called in. And if there is room for that implication, a regard to justice and propriety requires us to make the implication. If it is just and proper that the parties should be heard by the arbitrators, it can be but just and proper that they should be heard by the umpire. Perhaps, then, it is too much to say, as I have said, that the submission is *silent* on the point; perhaps, we ought rather to say that the submission itself speaks by implication, and declares that the parties were to have an opportunity of re-opening the case before the umpire—if one was called in—and, consequently, that they were to have notice of his being called in, and of the time and place of his sitting.

We think, then, that N. F. Walker *was* entitled to notice.

To what *sort* of notice was he entitled?

1. There is nothing in the submission on this question. For the solution of the question, therefore, we must resort to the common law; and that says, in such a case as this, merely what it says in so many other similar cases, that the notice must be a *reasonable* or "timely" notice.

Was the notice *in this case* a reasonable notice?

The sitting of the umpire was on the 10th of January, 1857, at Macon. On the 7th of January, 1857, one of the arbitrators, Mr. Stubbs, put in the postoffice at Macon, three letters, one to Mr. Gibson, one to Mr. Greene, who were the counsel of N. F. Walker, and one to Walker himself, properly addressed, in which letters he stated that an umpire had been selected, "to meet and hear the cause, at 12 M., on Saturday the 10th January, 1857, at Macon." Walker resided in Upson county, at a place about forty miles from Macon, and not near to any rail road. He never received the letter to him. Gibson resided within a mile of Barnesville, a place forty miles

from Macon, but on a railroad. He did not receive his letter till the 9th of January, at 9 o'clock, A. M.; which was, after the passenger train for Macon had passed by Barnesville. In the afternoon of that day, he replied to the letter by a freight train, and this is what he said:

"It is both morally and physically impossible for either Mr. Walker, or his counsel, to be with you, so early as to-morrow, M.; and in behalf of my client, I must beg you will allow him to be heard. Monday we cannot go, on account of Upson adjourned court." This was duly re-ceived; and was read by the arbitrators and the umpire, before the hour of meeting the next day.

Mr. Greene resided in Thomaston, twenty miles from Barnesville. He received his letter, not until the day of the meeting, and after the hour of the meeting. There was a daily mail between Thomaston and Barnesville.

Was such a notice as this a reasonable notice? Surely not, unless there was in the case something peculiar to render it so. And it was argued that there were special matters in the case, which were sufficient to render the notice reasonable. Those matters may be thus stated. The submission contained this stipulation: "and the par-ties and arbitrators shall so direct the case, as to have the award ready to be entered on the minutes of Upson Su-perior Court, at the" next November term, "if possible." That term was adjourned to Monday the 12th day of Jan-uary, 1857, two days after the day appointed for the ses-sion of the umpire. The disagreement of the two arbi-trators, and the consequent appointment of an umpire, did not happen until the 7th day of January, 1857. These were the special matters; and the argument was, that the arbitrators and the umpire were *bound* by the *submission*, to make up the award on Saturday the 10th of January, so that they might return it to the court, which was to meet the next Monday; and, consequently, that both, with respect to the notice given, and to the day appoint-

ed for the umpire's session, the arbitrators and the umpire did the very best that it was in their power to do. But we do not think it true, that the arbitrators and the umpire were thus bound by the submission. They were to return the award to that term, "if possible." But what was meant by "*if possible*"? that they were to so return it, even if in doing so, they would have to violate law—have to disregard a principle so important, as the one which makes reasonable notice of a judicial proceeding, a pre-requisite, to a binding judgment in that proceeding?

Besides, this part of the submission is to be construed with the part which allowed the arbitrators thirty days to make their award in, after the case was "finally submitted to them." So construed, the arbitrators would have had thirty days to make their award in, after any day they might have chosen as the day for the umpire's session. That, if not even a later day, would be the day on which the cause would be "finally submitted" to the arbitrators; and what the submission required, was, that the award should be made within thirty days after the cause was finally submitted to the arbitrators.

These special matters, then, we think, were not sufficient to render the notice a reasonable notice.

What effect did this failure to give reasonable notice to N. F. Walker, have on the award? Did it have the effect to *vitiate* the whole award, or only a part—the umpirage?

The submission says, that the award "shall be binding except for fraud." Fraud in whom? In either the arbitrators, or the parties. There is no restriction of the provision to either, to the exclusion of the others.

First, then, was the failure to give the notice, a fraud in the arbitrators?

In connection with this question we must look at what occurred subsequently to the failure. What was that? The arbitrators and umpire had the session on the day

appointed. Before them appeared the counsel of the other parties, who were permitted to be heard in full—both the arbitrators and umpire, and those counsel knowing that the counsel on the other side were desirous of also being heard. The question before the umpire was a question of the utmost importance, involving about $25,000. The notice, although not a reasonable one, as to N. F. Walker and his counsel, was a reasonable one as to his adversaries and their counsel; these counsel residing in the same place with the arbitrators and the umpire—Macon, and consequently *receiving* the notice on the same day on which it was mailed to N. F. Walker and his counsel. At any rate, they considered the notice to them sufficient, for they appeared under it without objection, and were heard. Finally the decision of the umpire was against N. F. Walker.

Now was the failure to give Walker the reasonable notice taken in connection with these consequent facts, a fraud in the arbitrators and umpire, on Walker? That is the question. It was, certainly, unfair treatment in them to Walker; and it deprived him of a most important right, the right of being heard by the umpire. And is not any unfair treatment of one of the parties to an arbitration, by the arbitrators, a fraud in them on him? Does it make any difference that they themselves gain nothing by the course they pursue, but think that they are only pursuing the terms of the submission? Certainly that these things are true, does not prevent the course from *operating* unfairly on that party. To him, the effect is the same as if the course were one that came from the worst motive and were one by which the arbitrators and umpire would themselves be gainers. I rather think myself that anything done by the arbitrators which operates unfairly on one of the parties and to his prejudice, is, in law, a fraud in them, on him. So far as the present case is concerned, it is no doubt true, beyond question, that

Walker vs. Walker.

whatever the arbitrators did they did in the best faith—influenced by their sense of duty under what they considered the exigency of the submission. Still the question remains, did not their condnct operate unfairly on one of the parties, N. F. Walker? And was not that *in law* a fraud on him?

2. But secondly, however, this may be, we do think, that in cases of this sort, to allow the favored party to take advantage of such conduct of the arbitrators, would be to allow *him* to perpetrate a fraud on his adversary. He certainly would be a gainer by the conduct. And the arbitrators being only his agents, to allow him to profit by their unfair conduct, would be the same as to allow him to profit by his own unfair conduct. And to allow a party to an arbitration, or to an ordinary suit, to profit by his own unfair conduct, would certainly be, to allow him to perpetrate a fraud on his adversary.

We think, then, that the failure in the arbitrators and the umpire to give to N. F. Walker reasonable notice of the session of the umpire, with the facts attendant and consequent, on that failure, did amount to a fraud on him—a fraud at least in the other parties, if not in the arbitrators and the umpire.

Assuming this to be so, the next question is, how far did such fraud *vitiate* the award? Did it vitiate the *whole* award or only the part of it which consisted *in the action of the umpire?*

3. If an award has a good part and a bad part, and the bad part is separable from the good; and the making of the bad part was not a condition of the making of the good; and the party in whose favor the bad part operates insists upon the good part being sustained, what can there be to prevent the good part from being sustained, and only the bad rejected? Surely there can be nothing except a special stipulation in the submission—a stipulation that there shall be not only an award as to all the matters

submitted, but that that award shall be good as to all of those matters. And so, we think, say, the authorities, on a comparative view of them, 3 Vin. Abr. Arb. (L.) 76, Ormelake vs. Cake. Cro. Jac. 355; Baspole's Case, 8 Coke; Wrightson vs. Rywater, 3 Mees. & W. 203; Russ. on Arb. 322; Wats. on Arb. 238; Pope vs. Brett, 3 Saund. 292, Note 1.

There are, however, some decisions to the contrary, perhaps. See Stone vs. Phillips, 4 Bing. N. C., 37.

Taking it to be true, then, that an award is to be upheld in the case aforesaid, unless there is in the submission a stipulation by which the award is not to be binding, except all the matters submitted are decided, the question is, does the submission in the present case contain any such stipulation? And the answer to that question must, it would seem, be in the negative. The submission contains not even the clause, *"ita quad fiat de praemissis"*—"so that the award be made, of and concerning the premises." Russ. Arb., 250. It contains no similar clause, whilst in several other important respects, it contains clauses of restriction on the power of the arbitrators. It may be said in the present case, as it was said in Wrightson vs. Rywater, (Supra,) that "the parties have given the *power* to the arbitrator to dispose of all matters, but have not made it a *condition* that all the matters should be disposed of by him."

We think, then, that the effect of the failure in the arbitrators, to give N. F. Walker reasonable notice of the session of the umpire, was merely to make the umpirage void, not to affect the other part of the award. That part, we think, remained good. And this is our answer to the general question, under consideration, viz: the question, what was the force of the first of the three main objections to the award, the objection that N. F. Walker did not have reasonable or "timely" notice of the session of the umpire, and that in the absence of him and his

counsel, the counsel of the other parties were heard by the arbitrators and the umpire.

Consequently, we affirm the judgment of the court rendered on this question of notice.

The next of the important objections to the award, was, that it was an award made on a condition.

4. The umpirage was, it is true, made on a condition; but the condition was one confined exclusively to the umpirage. All the other part of the award had been made—completely made by the two arbitrators, before they called in the umpire. Therefore, it was impossible that the umpirage could have had any influence on them in their making that part. The condition, then, if it could affect this part of the award at all, could do so, only by affecting the umpirage. But the utmost operation it could have on the umpirage, would be to render the umpirage void. And that being void would not, as we have seen, render the other part void.

We think, therefore, that this too was not a sufficient objection.

The last of the three important objections, was, that the award was incomplete—that it contained no decision of the demands against N. F. Walker, *individually*.

5. These demands belonged either to the part of the case covered by the umpirage, or to the other part. If they belonged to the former part, the fact of their non-decision was a fact like the fact that the umpirage was on a condition; and, therefore, was a fact that could reach the other part of the award only by its effect on the umpirage part; and its effect on this part could not be greater than to make this part void. And that would be an effect which, as we have seen, would not be sufficient to render the other part of the award void.

If the demands belonged to the part of the case not covered by the umpirage, then it is not true that there is no decision of them in the award. If that was the fact

the two arbitrators decided them.   This appears from the terms of their award.   They first make their award as to two matters specifically.   Then they proceed thus:   "As to all other matters submitted to us, (except as to the amount of money on hand at the death of William W. Walker, and as to which we have called in the Hon. Eugenius A. Nisbet as umpire,) we find and award as follows." Then they state the particulars of the award, the sum of which statement is, that they award to the complainants respectively, several sums which, in the aggregate, amount to between $50,000 and $60,000, to be paid by N. F. Walker *as administrator*.   This was equivalent to an award that Walker was not to pay anything *individually*.   The maxim, *expressio unius exclusio alterius*, applies.

Either way, then, we think, that this objection was not good.   And so, we also affirm the court below on this point.

The other objections were, it seemed, hardly relied on at all by the counsel for the objecting party, N. F. Walker. They, for the most part, were passed by his counsel in silence.   We think it best, therefore, to dismiss them with a single remark, that if there is any merit in them we have not been able to see it, in the slight view of them which we have taken.

Thus far, then, we affirm the action of the court below.

There remains another matter, and in that we think the court erred.

The part of the case covered by the umpirage, having become open and undetermined by reason of the court's judgment declaring the umpirage void, the case was, we think, in a condition to proceed to trial, as to that part, in due course.   We see nothing to show that this was not the condition of the case.

The court below seems to have decided otherwise; although we are not quite sure that we understand what

was the import, or rather the extent of the court's decision.

We think that the case, as to this part of it, ought to go on in regular course, in the court below, to a final decision.