JAMES DAY, Respondent, *v.* GEORGE HAMMOND, Appellant.

The provision of the Revised Statutes (2 R. S., 542, § 4) requiring arbitrators to take an oath as prescribed, applies to all submissions in writing, although there be no clause therein for entering judgment upon the award.

A failure to take the statutory oath, however, does not make the award a nullity; it is an irregularity which may be waived.

In case there is no waiver, the Supreme Court may set aside the award upon proper application, and in an action upon the award an answer setting up the irregularity is in the nature of an application to this equitable power of the court, and is sufficient to present the question.

Where, by the terms of a submission, two arbitrators are appointed, with authority in case of disagreement, to appoint a third, the decision of any two of them to be final, in case of such disagreement and appointment a rehearing is necessary; and unless this right is expressly and unequivocally waived a decision and award without a rehearing, upon notice to the losing party of the time appointed therefor, is not binding and cannot be enforced.

*Hall* v. *Lawrence* (4 Term R., 589) limited and distinguished.

The authorities as to proceedings before arbitrators collated.

(Argued January 16, 1874; decided May term, 1874.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, affirming a judgment in favor of plaintiff, entered upon the decision of the court at Special Term.

This action was brought upon an award.

The submission was in writing under seal. Its substance was, that the parties had agreed to submit certain matters in dispute to the arbitration and decision of E. G. Tifft and E. L. Southwick; in case they could not agree, they were to " *call in* " some disinterested third man, and the decision of any two of them was to be binding and final. " Said arbitrators to give at least six days' notice to each of the parties of the time and place of meeting, to hear and determine the claims in dispute." On the 21st day of March, 1870, the two arbitrators named in the submission met. They were sworn and proceeded to hear the proofs and allegations of the parties. The testimony was taken down in writing. The

original arbitrators having failed to agree, they appointed, by writing, one John M. Slater, as third man, under the submission. The three persons then met on April 25th, 1870, and examined the minutes of the testimony taken before Tifft and Southwick. On the same day they made their award, which was signed by Tifft and Slater. Southwick was present, but refused to join in the award. No notice was given to the defendant that Tifft and Southwick had failed to agree, nor of Slater's appointment, nor of the time or place of meeting on April twenty-fifth. It further appeared that he had no knowledge of any of these facts, until the award was made and delivered to the plaintiff. The oath provided for in the Revised Statutes, in the chapter on arbitrations, was not administered to Slater. (2 R. S., 542, §§ 4, 5.) After the award was made, a copy of it was served by the plaintiff on the defendant, within the time fixed in the submission papers. The defendant refused to comply with its terms.

*J. M. Humphrey* for the appellant. The submission in this case is governed by the provisions of the Revised Statutes in relation to arbitrations, so far as the same are applicable. (*Bulson* v. *Lohnes*, 29 N. Y., 291.) The neglect of one of the arbitrators to take the oath, as required by the statute, is good ground for declaring the award invalid. (*French* v. *Moseby*, 1 Lit., 248; *Lile* v. *Barrett*, 2 Bibb, 167; *Combs* v. *Little*, 3 Green Ch., 310; *Inslee* v. *Flagg*, 3 Dutch., 368; *Overton* v. *Alpha*, 13 La. An., 558; *Bethea* v. *Wood*, 9 id., 88; *Frissell* v. *Fickes*, 27 Mo., 557; 18 id., 399; 41 id., 516.) The parties were entitled to notice of the meeting and hearing before the three arbitrators. (*Elmendorf* v. *Harris*, 23 Wend., 628; *Falconer* v. *Montgomery*, 4 Dall., 233; *Passmore* v. *Pettit*, id., 271; *Selby* v. *Gibson*, 1 H. & J., 362; 8 Pet., 165; Kidd on Awards, 63; Morse on Arbitration, 119.) The award was invalid because made on the testimony given before the original arbitrators. (*In re Salkeld*, 12 Ad. & E., 767; *Falconer* v. *Montgomery*, 4

Dall., 233; *Passmore* v. *Pettit*, id., 271; *Ranney* v. *Edwards*, 17 Conn., 310; *Hall* v. *Lawrence*, 4 D. & E., 589; *Turner* v. *Bird*, 2 E. C. L., 111, 116.) The court erred in permitting Slater, the third arbitrator, to purge himself of the charge of partiality and misconduct, in making the award, by his own testimony. (*Mayor, etc., of N. Y.* v. *Butler*, 1 Barb., 336; 10 Pick., 275; 1 Bacon's Abr., 367; *Chicott* v. *Le Quesne*, 2 Ves., 315; *Walker* v. *Frobisher*, 6 Ves., Jr., 71; 6 Q. B., 637.)

*John Ganson* for the respondent. The failure to swear the third man, called in, does not vitiate the award. (*Howard* v. *Sexton*, 4 Com., 157; *Bedening* v. *Wheeler*, 24 Wend., 258; *Winship* v. *Jewett*, 1 Barb. Ch., 173.) The arbitrators, in the proper exercise of the authority conferred upon them, called in the third person to reconcile their differences. (*Hall* v. *Lawrence*, 4 D. & E., 589; *Turner* v. *Bird*, 27 E. C. L., 110, 111; *Ranney* v. *Edwards*, 17 Conn., 309; *Graham* v. *Graham*, 12 Penn. St., 134; *Garty* v. *Phillips*, 2 id., 410.)

DWIGHT, C. This is an action of debt upon an award of arbitrators.

The answer of the defendant sets forth the submission papers. These provide for a submission of matters in controversy between the parties to two persons, and in case they cannot agree they are to "call in" some disinterested third man and the decision of any two of them was declared to be binding or final. The arbitrators were to give the parties six days' notice of the time and place of hearing. The answer further states that the two arbitrators appointed by the parties under the submission failed to agree and that one Slater was called in by the original arbitrators as a third arbitrator, without the defendant's knowledge or consent. It is alleged that this appointment was not in writing, that Slater was not sworn before any court or magistrate, and that the defendant had no notice of the time and place of any hearing before Slater; and that, in fact, Slater never heard

any of the proofs or allegations in the action, and that he acted with partiality or prejudice in reaching his conclusions. The defendant insisted that, on these facts, he was entitled to judgment that the award should be set aside. At the trial the referee found the facts substantially as set forth in the answer, Slater having formed his conclusions from reading the evidence taken before the original arbitrators, except that there was a finding that there was no bias, partiality or prejudice on Slater's part.

On this state of facts two principal questions arise.

*First.* What was the effect of Slater's failure to take an oath? *Second.* What was the effect of his failure to notify the defendant of a time and place for hearing him and such testimony as he might see fit to adduce?

*First.* The Revised Statutes, in the chapter on arbitrations, provide as follows: "Before proceeding to hear any testimony the arbitrators shall be sworn faithfully and fairly to hear and examine the matters in controversy to the best of their understanding. Such oath may be administered by any judge of any court of record, or by any justice of the peace or by any commissioner of deeds." (2 R. S., 542, §§ 4 and 5 of title on Arbitrations.) It is clear that this provision applies to all submissions in writing, even though there be no clause for entering judgment upon the award. (*Bulson* v. *Lohnes*, 29 N. Y., 291.) In the present case the submission to the two original arbitrators is in writing; their power to make an appointment of a third arbitrator is also in writing. By a well known legal rule their appointment, when made, must be deemed to have been incorporated, by relation, into the original submission. It is immaterial, for the purposes of this discussion, whether Slater be regarded as an arbitrator or an umpire, as both are equally within the intent of the statute.

The first subject of inquiry is, whether Slater's failure to take the statutory oath invalidates the award so completely as to make it a nullity, or whether it is an irregularity which leaves the award in force until set aside by the court, or whether it is of no legal consequence.

On these points there is a great conflict in the decisions of
the respective States. In New Jersey, where an oath of
office is required by law of arbitrators, an award made with-
out taking the oath is a nullity. (*Combs* v. *Little*, 3 Green
Ch., 310; *Inslee* v. *Flagg*, 2 Dutch., 368.) The same rule
prevails in Kentucky (*Lile* v. *Barnett*, 2 Bibb, 166); so in
Louisiana (*Overton* v. *Alpha*, 13 La. Ann., 558; *Bethea*
v. *Hood*, 9 id., 88); and in Missouri (*Frissell* v. *Fickes*, 27
Mo., 557; *Toler* v. *Hayden*, 18 id., 399; *Fassett* v. *Smith*, 41
id., 516). On the other hand, it has been held in Vermont, in
Wisconsin and in Pennsylvania, that the oath of the arbitrator
may be waived, and that its absence is not a vital or jurisdic-
tional question. (*Woodrow* v. *O'Conner*, 28 Vt., 776; *Hill*
v. *Taylor*, 15 Wis., 190; *Otis* v. *Northrop*, 2 Miles, 350.)
This result has also been reached in the New York cases.
(*Browning* v. *Wheeler*, 24 Wend., 258; *Winship* v. *Jewett*
1 Barb. Ch., 173; *Howard* v. *Sexton*, 1 Den., 440; S. C.,
4 N. Y., 157.) The defendant insists that the question did
not come up directly in the last case. The principle, how-
ever, was involved. The oath cannot be waived if it is juris-
dictional. In *Inslee* v. *Flagg* (*supra*) the case of *Howard* v.
*Sexton* is commented upon, and the decision is made to rest
upon the ground that the New York courts hold that the
agreement of the parties gives the arbitrator jurisdiction and
that the absence of the oath is not vital. In following *How-
ard* v. *Sexton* this court must hold that the failure of
Slater to take an oath as arbitrator was, at the most, an
irregularity and could be waived. There was, however, in
the present case, no waiver. The irregularity continued
down to the issuing of the award.

The true view is that the court, acting as a court of equity,
should, where there is no waiver, set aside the award on
proper application. The statute should be regarded as having
some practical operation. While it is reasonable to hold, as
in *Howard* v. *Sexton*, that the parties may, by mutual con-
sent, waive the statutory provision, yet, in a case like the
present, where there is no evidence whatever of waiver, the

correct construction of the statute is that a party may insist upon the observance of its requirements; and the court may, in the exercise of a sound discretion, set aside the award for want of such observance. The oath, to a certain extent, tends to secure freedom from bias and partiality, and to exclude from the arbitrament of cases men who are, for these reasons, unfit to act. The parties have a right to ask the arbitrators to purge themselves from any imputations of this kind. They should be protected by the courts in the exercise of this right. Under the rules of the Code the allegations in the answer must be regarded as in the nature of an application to the equitable powers of the court. (*Ryder* v. *Jenny*, 2 Rob., 56.)

*Second.* The next inquiry is, whether it was the duty of the " third arbitrator " to rehear the parties, and, as incidental thereto, to give notice to the defendant of the time and place of such rehearing. This question has been frequently before the courts, both as to umpires and as to third arbitrators. The cases sometimes refer indiscriminately to these two classes of persons. In the course of the discussion the cases of both classes will be considered, and, also, whether there is any substantial distinction between them. A distinction between a " third arbitrator " and an " umpire " is taken in *Lyon* v. *Blossom* (4 Duer, 318, 325). It is there said " when an umpire has been duly appointed, and in consequence of a disagreement of the arbitrators has entered on the performance of his duties, the authority to make a final decision is vested exclusively in him; the original powers of the arbitrators have ceased to exist. They are *functi officio.* * * * But when two arbitrators, unable to agree, exercise a power given by the submission by appointing a third, the authority to make an award is vested in them jointly; and even when an award made by only two of them is good, it must be shown to be the result of their joint deliberations." Under this distinction, the present case must be regarded as that of a third arbitrator.

The power to appoint a third arbitrator may be exercised

before a hearing, when all would hear the case as original referees; or it may, in some instances, be exercised after a hearing by two, and disagreement on their part.

It is now settled in England, that the correct practice is, for the two arbitrators to select the third before a hearing, and that there can be no appointment after a disagreement, without special authority. It then partakes of the nature of umpirage, though not falling strictly within that term. On this point, reference may be made to the language of Russell: "If two arbitrators only are appointed by the submission with power to appoint a third, and an award made by any two is valid, they must choose their colleague before they take any step in the reference, in order that the parties may have the benefit of the judgment of all three on the whole of the matters. They have no business to treat the third arbitrator as an umpire to be called in in case of difference, except by consent of parties." (Pp. 207, 208 [ed. 1870].) He then proceeds to state that an umpire must rehear the parties, and that a second trial becomes necessary. This rule is derived from the fact that he is governed by the same principles as those that control arbitrators. He says: "The umpire, when called upon to act, is in general invested with the *same powers as the arbitrators, and bound by the same rules, and has to perform the same duties.* He must pursue the same regular course with respect to the conduct of the case as arbitrators. He must examine such witnesses as the parties choose to produce, and as to such points as they choose to raise, although the same witnesses have been examined as to the same points before the arbitrators. He may not take the evidence or any part of it from the notes of the arbitrators, unless there be a special provision in the submission, or a clear agreement between the parties permitting such a course." (P. 228.) These propositions are sustained by the cases cited by the writer, and in particular by the decision in the case of *In re Jenkins* (1 Dowl. [N. S.], 276). In that case an umpire did not examine witnesses, but formed his opinion upon the notes of the arbitrators. He was requested by one of the

parties to examine witnesses but declined, thinking that both should request. The court set the award aside, holding that the only case in which the umpire could refrain from rehearing the cause, examining witnesses, etc., was where there was a waiver. (See to the same effect *Salkeld* v. *Slater*, 12 Ad. & Ell., 767.)

The principle thus established is, that parties are always entitled to a hearing before arbitrators, unless that hearing is waived; and that if an umpire or other arbitrator is called in, in case of disagreement, the same rule as to a right of rehearing applies. The waiver of this right must be distinct and unequivocal.

The same general view is taken in the American courts. In *Elmendorf* v. *Harris* (23 Wend., 628) it was held that if an umpire decides without having appointed a time for hearing, and without giving notice of it to a losing party, the award is a nullity in a court of law. There is no necessity to take proceedings in equity to set the award aside. The case was rested on the great principle of justice, that no one should be condemned unheard. Other cases are : *Falconer* v. *Montgomery* (4 Dallas, 233); *Passmore* v. *Pettit* (id., 271); *Selby* v. *Gibson* (1 Har. & J., 362, note); *Walker* v. *Walker* (28 Ga., 140); *Thornton* v. *Chapman* (2 Cranch C. C., 244); *Taber* v. *Jenney* (Sprague, 320); *Small* v. *Courtney* (1 Brevard [S. C.], 205); *Frissell* v. *Fickes* (27 Mo., 557); *Daniel* v. *Daniel* (6 Dana, 93). The terms of the statute respecting arbitrations point in the same direction. The seventh section provides that all the arbitrators must meet together and *hear* all the allegations and proofs of the parties. It would seem that the "hearing" thus made requisite must be of the same kind for all. If one can "hear" the case without notice, all can — if one can proceed without the examination of witnesses, the same rule would seem to be applicable to all. It must be conceded that the rule thus laid down will sometimes require two distinct trials — one before the original arbitrators, the other before the umpire or the third arbitrator, with his associates. This result can be readily avoided

by a provision that the umpire shall sit with the arbitrators, or by appointing three arbitrators in the first instance. (Rus·sell on Arbitrations, 228; *Winteringham* v. *Robertson*, 27 L. J. [N. S.] [Ex.], 301.)

So the effect of the rule may be avoided by distinct evidence of waiver, as has been already intimated. (*Hall* v. *Lawrence*, 4 Term, 589; *Matson* v. *Trower*, R. & M., 17; *Graham* v. *Graham*, 12 Penn. St., 128.) The last case distinguishes *Hall* v. *Lawrence* from *Falconer* v. *Montgomery* (*supra*), on the ground that, in the former case, there had been a waiver, which of course implies knowledge of the appointment of the umpire or third arbitrator, and evidence of consent that he shall proceed without hearing the parties *de novo*. *Hall* v. *Lawrence* has sometimes been misunderstood as deciding a general rule in the law of arbitrations. Its effect should be limited to the proposition, that parties may waive · their clear and indisputable right to a rehearing of the cause. To that extent it is sound law. ( *West Jersey R. R.* v. *Thomas, infra; Salkeld* v. *Slater, supra.*)

It is now proper to show, with more distinctness, that the case of a third arbitrator, as to the points now under consideration, is not to be distinguished from that of an umpire. In pure umpirage, the decision theoretically rests solely with the umpire; in the case of a third arbitrator, his opinion practically controls the decision. All the reasons requiring a new hearing in the one case, demand it in the other. If it were right to invoke in *Elmendorf* v. *Harris* (*supra*) " the principles of eternal justice " to govern the case of umpirage, it is equally proper to invoke them in the case of a third arbitrator whose vote is sure to prevail, in case the original arbitrators continue to disagree, as it is to be presumed that they will. In some of the cases already cited, the persons named umpires were, in fact, third arbitrators. This was the case in *Falconer* v. *Montgomery* (*supra*); *Selby* v. *Gibson* (*supra*). *West Jersey R. R.* v. *Thomas* (6 C. E. Green Eq., 205) is quite in point. That was a case where a third arbitrator was appointed after a disagreement, and no

opportunity for a hearing was afforded by him to the contending parties. The court said that, where a new arbitrator was chosen, the complainants had the right to adduce additional testimony and additional arguments. *    *    * It was added that it was as much an act of misconduct to shut them out from this right as it would have been to proceed in the first place without any hearing. This conclusion is supported by the reasoning in *Bulson* v. *Lohnes* (29 N. Y., 291), in which it is maintained that it is a fatal error if all the original arbitrators do not hear the evidence, as the decision is based on the statute which requires, in general terms that *all* the arbitrators shall " hear " the proofs and allegations of the parties, without distinguishing in any manner between those which are original and those which are subsequently appointed; all of whom equally derive their authority to act from the instrument of submission.

In the case at bar there is no evidence of waiver of the right to a rehearing and to notice of it. It is true that the submission provides, in case of disagreement between the two arbitrators, that a third person may be " called in." The fair import of this language is, that he comes into the case like any other arbitrator, with the same powers and duties. The interests of justice require that a party should not be deemed to have parted with so important and essential a right as that of having his case heard, on slight evidence or on implication. The proof of waiver should be distinct and unequivocal.

There is some doubt upon the authorities whether the award is a nullity in such cases or whether there must be an exercise of equitable jurisdiction to set the award aside. The rule as laid down in *Elmendorf* v. *Harris* and in *Bulson* v. *Lohnes*, would make the award absolutely void. On the other hand, in *Thorburn* v. *Barnes* (L. R. [2 C. P.], 384), it was held, after an elaborate examination of the question, both on authority and on principle, that the objection of a want of hearing by arbitrators, cannot, at common law, be raised by plea in bar, but only by motion to set the award

aside. It was held that it did not resemble the case of a foreign judgment where a party appears in a court against his will. The arbitration is a tribunal of a party's own choosing, and a failure to hear him is simply a case of misconduct, supplying a basis for an application to set the award aside. The distinction is of but little importance under the legal and equitable jurisdictions, as blended by the New York Code.

As these conclusions are sufficient to dispose of the case, it is unnecessary to consider the other points raised on the argument.

The judgment of the court below should be reversed.

All concur.

Judgment reversed.